UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

**Civil No. 11-925 (SRN/TNL)**

**Thaddeus Bania**,

    Petitioner,                    **REPORT AND RECOMMENDATION**

    v.

**Wendy J. Roal, Warden**

    Respondent.

___

Thaddeus Bania, pro se

Ana H. Voss, Esq., Office of the United States Attorney, on behalf of Respondent.

___

TONY N. LEUNG, United States Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge on Thaddeus Bania's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 1]. The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the habeas petition be dismissed with prejudice.

**I.     BACKGROUND**

Petitioner Thaddeus Bania ("Bania") is a federal inmate currently designated to the Federal Prison Camp in Duluth. (Declaration of Angela Buege ("Buege Decl.") ¶ 3, Attach. A, Public Information Data.) Bania is serving a 40-month sentence, followed by

two years of supervised release for Conspiracy to Embezzle/Steal Property from a Labor Organization, Mail Fraud, and Theft from a Labor Organization. (*Id.*)  Bania's projected release date is November 28, 2012, via Good Conduct Time Release. (*Id.*)

On September 21, 2010, Bania requested that the BOP immediately transfer him to a Residential Reentry Center ("RRC").[1]  (Buege Decl., ¶ 7, Attach. C, Administrative Remedy Generalized Retrieval Data Form).  Bureau of Prisons ("BOP") unit staff reviewed Bania's RRC placement request under the Second Chance Act on November 5, 2010.  (Buege Decl., ¶ 4, Attach. B, Review for RRC).  The unit team determined 150-180 days of RRC placement would be sufficient to provide Bania the greatest likelihood of successful reintegration into the community.  (Buege Decl., ¶ 6, Attach. B, Review for RRC).  Bania's requests for immediate placement at an RRC were denied at each level of the BOP administrative remedy program.  (Buege Decl., ¶ 7, Attach. C, Administrative Remedy Generalized Retrieval Data Form).

On April 14, 2011, Bania filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the BOP's RRC placement decision and the BOP's failure to provide incentives for skills development program participation under 42 U.S.C. § 17541(a)(1)(G).  Bania stated his grounds for relief as follows:

> [1] The Unit Team failed to properly perform the individual assessment required using the five factors from 18 U.S.C. § 3621(b) when Bania requested an immediate transfer to a Residential Reentry Center. [2] The Unit Team incorrectly

---

[1] The terms halfway house, community correctional center and community correctional facility correspond with the term residential reentry center.

> interpreted and applied the limitation of 18 U.S.C. § 3624(c) in regards to Program Statement 7310.04 (Dec. 16, 1998). [3] The Bureau of Prisons has violated 42 U.S.C. § 17541 by failing to provide incentives as mandated by Congress in the Second Chance Act of 2007.

(Petition, No. 9- Ground 1). Bania seeks the following relief:

> Order the Bureau of Prisons to: 1. Conduct an individual assessment regarding petitioner's request for immediate transfer to an RRC as required by § 3621(b), giving strong consideration to the issues under the heading BACKGROUND, Page 5 to Page 8, in petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus pursuant to Title 28 U.S.C. Section 2241. 2. Consider petitioner for an incentive reward as offered by § 17541(a)(1)(G) for petitioner's participation in the skills development program.

(Mem. in Supp. of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet'r Mem.") at p. 9).

## II.   DISCUSSION

### A.   Statutory and Regulatory Framework

Prior to December 2002, the BOP interpreted that an RRC was a "place of imprisonment" under 18 U.S.C. § 3621(b), and the BOP could assign a federal prisoner to an RRC at any time during his sentence. *Arthur v. Roal*, Civ. No. 09-3043 (RHK/JSM), 2010 WL 3025019 at *3 (D.Minn. July 6, 2010). The BOP changed its interpretation of "place of imprisonment" in December 2002, and determined an inmate could only be transferred to an RRC as part of the pre-release programming under 18 U.S.C. § 3624(c). *Id.* The BOP also determined that Section 3624(c) authorized the BOP to assign a

prisoner to a halfway house for the lesser of the last six months of his sentence or the last ten percent of his sentence.  *Id.*  This led to litigation, and in a number of circuits, rejection of the BOP's new interpretation.  *Id.* (citing *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004).  Then, the Second Chance Act of 2007, effective April 9, 2008, amended 18 U.S.C. § 3624(c) to provide, in relevant part:

> (1)  In General.  The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed twelve months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.
>
> . . .
>
> (4)  No limitations.  Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
> . . .
>
> (6)  Issuance of Regulations.  The Director of the BOP shall issue regulations pursuant to this subsection not later than 90 days after the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the BOP is
>
> (A)  conducted in a manner consistent with section 3621(b) of this title;
>
> (B)  determined on an individual basis; and
>
> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3621(b) authorizes the BOP to designate the prisoner's place of imprisonment that the BOP "determines to be appropriate and suitable, considering" the following factors:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence—
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

> Five days after the Second Chance Act went into effect, the BOP issued an April 14, 2008 Memorandum explaining the legislative changes to the law and providing guidance to BOP staff on administering the new law . . . The section of the April 14 Memorandum regarding the procedures that staff should use in making pre-release RRC placement decisions provides in part: "With minor adjustments . . . staff should make inmates' pre-release RRC placement decisions on an individual basis using current Bureau Policy, Program Statement No. 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/1998) [and requiring review of pre-release RRC placements to coincide with the five factors set forth in 18 U.S.C. § 3621(b)] . . . The April 14 Memorandum also states, "Assessing inmates under the above criteria necessarily includes continuing to consider the more specific, and familiar, correctional management criteria found in PS 7310.04, including, but not limited to, the inmate's needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly.

*Bowers v. Warden, Federal Prison Camp, Yankton*, No. Civ. 10-4006, 2011 WL 795546 at *2 (D.S.D. Feb. 25, 2011).

The Second Chance Act also created the "Federal prisoner reentry initiative," which provides in relevant part:

> (a) In general
>
> The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal Prisoner reentry initiative:
>
>> **(1)** The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons-
>>
>> . . .
>>
>>> **(G)** provide incentives for prisoner participation in skills development programs.
>>
>> **(2)** Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include—
>>
>>> **(A)** the maximum allowable period in a community confinement facility; and
>>>
>>> **(B)** such other incentives as the Director considers appropriate (not including a reduction of the terms of imprisonment.)

42 U.S.C. § 17541.

### B.  Jurisdiction and Standard of Review

Jurisdiction exists under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). "[C]hallenges brought by federal prisoners that implicate the fact or duration of confinement but do not stem from the original conviction or sentence can be brought only under 28 U.S.C. § 2241." *Crouch v. Norris*, 251 F.3d 720, 723 (8th Cir. 2001) (quoting *Walker v. O'Brien*, 216 F.3d 626, 632-33 (7th Cir. 2000)). RRC placement decisions implicate the fact or duration of confinement. *See e.g. Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004).

The BOP is required to consider an inmate's request for RRC placement in good faith. *Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008). The BOP has broad discretion in designating correctional facilities under 18 U.S.C. § 3621(b). *Fegans v. United States*, 506 F.3d 1101, 1103-1105 (8th Cir. 2007). The Court's review is limited to whether the BOP abused its discretion. *Westrich v. Federal Bureau of Prisons*, No. 4:05-CV-787 CAS, 2008 WL 250172 at *3 (E.D.Mo. Jan. 29, 2008) (citing *Grove v. Federal Bureau of Prisons*, 245 F.3d 743, 746-47 (8th Cir. 2001)).

### C.  Whether the BOP performed the individual assessment required under 18 U.S.C. § 3621(b).

Unit staff reviewed Bania's request for pre-release Residential Reentry Center placement and completed a form entitled "Review for Residential Reentry

Center\*\*\*Second Chance Act of 2007\*\*\*" ("Review for RRC"). (Buege Decl., ¶ 4, Attach. B, Review for RRC). The form is signed by the unit manager and dated November 5, 2010. (*Id.* at Attach. B). The first paragraph of the form provides:

> Resources of the Facility Contemplated: The following areas were considered for the above mentioned inmate: Job search, Transportation, Clothing assistance, Drivers license, Housing search, Drug/Alcohol aftercare, Medical Resources, Education Programs, and Mental Health aftercare programs.

*Id.*

Under the heading "Nature and Circumstances of the Offense," the form indicates: "Conspiracy to Embezzle/Steal property-Labor Organization." *Id.* The form also contains a heading for "History and Characteristics of the Offender," which contains notations that Bania has completed five "COLLEGE/HS" classes, his work performance was satisfactory, Bania completed three "RPP Participation" classes, he has one item of discipline history, and no relevant prior record. *Id.* The area on the form for statements by the sentencing court is blank. *Id.*

Under the heading "Inmate Has the Following Resources," unit staff checked boxes for family support, specialized job skills, residence, financial resources, life skills, and community resources. *Id.* Next to "residence" staff noted, "spouse has home." *Id.* Staff also wrote, "Full Disability-interested in working" and "$1348 last 6 mos." *Id.* Unit staff noted Bania was not sentenced within the guideline range, 97 to 121 months; he was sentenced to 40 months. *Id.* The final line on the form states: "Our RRC

decision is based on the fact that 150-180 days of RRC placement is of sufficient duration to provide the greatest likelihood of successful integration into the community." *Id.*

Bania contends the unit team's RRC placement decision was not based on proper assessment of the five factors in 18 U.S.C. § 3621(b).  In support of his claim, Bania asserts the unit team failed to consider the sentencing judge's Statement of reason; failed to consider that the nature and circumstances of his offense were nonviolent with no loss to the victim; failed to consider his health related issues and denials of his requests for certain medical care; and improperly assessed his resources of family support, specialized job skills, residence and state of joblessness in the Chicago area.  (Pet'r Mem. at pp. 7-8).

The BOP found Bania to have family support as a resource upon reentry into the community, but Bania asserts his siblings are younger and have their own families to support, and there is no guarantee his own marriage will survive, given his incarceration. Bania also contends the BOP was incorrect to find that he had a residence, because he does not own any property, it is owned solely by his spouse.  Although the BOP found Bania to have specialized job skills, Bania maintains he does not have a college education or certification in a specialized field.  Bania submitted a news article in support of his contention that the BOP failed to consider the state of joblessness in the Chicago area, and how difficult it will be for Bania to compete for employment.  The Court notes that Bania will likely be eligible to receive disability income after his incarceration, and his ability to find employment is relatively less significant from a financial perspective than it is for inmates who are not disabled.

The BOP is not required to conduct a *detailed* RRC placement analysis. *Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008). The form used by the BOP indicates that each of the five factors under Section 3621(b) was considered, albeit with limited detail. The first paragraph of the form indicates the BOP considered medical factors. The Court also finds there was nothing in the sentencing court's statement of reason, beyond the fact that Bania would be sentenced well below the guideline range, that the BOP was required to consider in making the RRC placement decision. The Court does not conduct de novo review of BOP decisions to warrant discussion of the type of arguments that Bania raised here; for example, whether his wife will welcome him into her home after his incarceration. In sum, Bania has not established that the BOP failed to consider the five factors under Section 3621(b) or that the BOP acted in bad faith in considering those factors when making its RRC placement determination.

**D.     Whether the Unit Team erred in failing to consider Program Statement 7310.04 9(4).**

Bania has a number of medical conditions including side effects from neck cancer treatment, peripheral neuropathy, and coronary heart disease. (Pet'r Mem. at pp. 5-7). Bania asserts the unit team failed to consider that he has Medicare, and he could assume full responsibility for his own health care expenses if he were placed in an RRC. The Government did not specifically respond to this contention. The Court notes, however, that the form completed by BOP unit staff indicates that it considered medical factors in making the RRC placement decision. Nevertheless, Bania argues the BOP was required

to consider his medical conditions and his ability to assume the financial burden of his health care under Program Statement 7310.04 9(4), which provides:

> Inmates with minor medical conditions or disabilities may also be considered for community placement. Inmates are required to assume financial responsibility for their health care while assigned to community programs. Such inmates must provide sufficient evidence to institution staff of their ability to pay for health care while at a CCC prior to the referral being made. When an inmate is unable or unwilling to bear the cost of necessary health care, the inmate shall be denied placement.

A claim that the BOP violated its own Program Statement, when the Program Statement was not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it cannot be sustained in a habeas petition. *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). Program Statements are BOP policies, guidelines or interpretative rules, not substantive law. *Id.* (citing *Jacks v. Crabtree*, 114 F.3d 983, 985 n.1 (9th Cir. 1997); *Reno v. Koray*, 515 U.S. 50, 61 (1995) (characterizing BOP program statements as simply interpretive rules); BOP Program Statement 1221.66, Chapter 2.1 (referring to BOP program statements as "policies," not rules); *see also United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990) ("[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party.") For this reason, the Court recommends denying Bania's request for relief based on the BOP's failure to consider Program Statement 7310.04 9(4) as one of the factors in making an RRC placement decision.

E.    **Whether the BOP violated 42 U.S.C. § 17541(a)(1)(G) by not providing incentives for participation in skills development programs.**

Bania requested a copy of the BOP's written policy regarding Section 17541(a)(1)(G) incentives.  (Petition, Attach. at pp. 9-14).  The Warden responded that there are no specific written incentives, but "inmates are afforded increased RRC placement for participation in programs designed to reduce recidivism."  (Petition, Attach. at p. 10).  However, the RRC placement decisions "must be based on 18 U.S.C. § 3621(b), correctional and population management interests."  *Id.*  The Regional Director reiterated that the BOP does not have a specific written incentive for the Inmate Skills Development Plan.  (Petition, Attach. at p. 12).  The Administrator of National Inmate Appeals in the Central Office informed Bania that he could submit a Freedom of Information Act request for any BOP records.  (Petition, Attach. at p.14).  Based on these responses from the BOP, Bania argues the BOP has not implemented an incentive reward and has violated Section 17541(a)(1)(G).

Respondent contends the BOP has discretion to determine whether to provide the maximum allowable period in an RRC as an incentive for participation in reentry and skills development programs.  This Court finds that the plain language of the statute supports Respondent's contention. Full RRC placement is only one example of an incentive that may be offered.  42 U.S.C. § 17541(a)(2).  Bania has not requested the Court to order Respondent to provide him the maximum allowable period in an RRC as an incentive; Bania requests only that the BOP "consider petitioner for an incentive

reward." (Pet'r Mem. at p. 9). Bania contends that merely *considering him* for placement in an RRC is not an incentive, because he is already entitled to consideration for RRC placement under the Section 3621(b) factors.

In circumstances where it is unclear whether the BOP separately considered full RRC placement as an incentive for participation in skills development programs, courts in the Middle District of Pennsylvania have ordered the BOP to consider the petitioner, in good faith, for a full twelve month RRC placement as an incentive under § 17541, separately from the BOP's determination under 18 U.S.C. § 3624(c). *Krueger v. Martinez*, 665 F.Supp.2d 477, 485-86 (M.D.Pa. 2009); *Hill v. Scism*, Civ. No. 3:CV-11-0080, 2011 WL 705354 at *2-3 (M.D.Pa. Feb. 18, 2011) (following *Kruger*). But other courts have found the *Krueger* decision to be flawed. *See Crim v. Benov*, No. 1:10-cv-01600-OWW-JLT HC, 2011 WL 1636867 at *8-9 (E.D. Cal. Apr. 29, 2011) (collecting cases). In *Crim*, the court held that "[a]lthough § 17541(a)(1)(G) appears to mandate that the BOP establish a reentry initiative that will 'provide incentives for prisoner participation in skills development programs,' the form, manner and scope of such incentives is left entirely to the discretion of the BOP." *Crim*, 2011 WL 1636867 at *9.

The Court joins those rejecting *Krueger*. The plain language of Section 17541(a), by use of the word "shall," mandates the Attorney General, in coordination with the Director of the Bureau of Prisons, subject to the availability of appropriations, to do a number of activities to establish a Federal prisoner reentry initiative. One of those activities is to provide "incentives for prisoner participation in skills development

programs." 42 U.S.C. § 17541(a)(1)(G). But, full RRC placement is only one example of an incentive that may be awarded *at the discretion of the BOP*. 42 U.S.C. § 17541(a)(2)(A) (emphasis added). The statute allows the BOP to award any other incentive that the Director of the BOP "considers appropriate." 42 U.S.C. § 17541(a)(2)(B).

Here, the BOP acknowledged that "increased RRC placement" is an incentive for participation in skills development programs, but it also considers "the 18 U.S.C. § 3621(b), correctional and population management interests" in RRC placement decisions. (Petition, Attach. at p. 10); *Compare Krueger*, 665 F.Supp.2d at 484-85 ("the BOP conceded it did not separately consider § 17541(a)(2)(A) in reaching its decision; instead, the BOP considered Krueger's educational accomplishments, vocational skills, participation in skills development programs, and the like as a part of his general consideration for RRC placement.") The Court disagrees with Bania that the BOP's consideration for *increased* RRC placement, even though it is subject to consideration of other factors under Section 3621(b), is no incentive at all. The Court finds that the BOP provides an incentive for skills participation programs if it *considers* awarding longer RRC placement than it would award absent completion of a skills development program. In other words, the likelihood of awarding longer or full RRC placement is greater if an inmate completes a skills development program. *See Crim*, 2011 WL 1636867 at *10 ("TCI has complied with the SCA by providing Petitioner a list of skills development programs that, if completed successfully, may increase the likelihood that Petitioner will

be considered for the maximum RRC placement to which he is eligible.")  Therefore, the Court finds the BOP did not abuse its discretion in awarding *consideration of increased* RRC placement as an incentive under 42 U.S.C. § 17541(a)(1)(G).

**IV.    RECOMMENDATION**

Being duly advised of all the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT the habeas petition be DENIED, the case be DISMISSED WITH PREJUDICE, and that JUDGMENT BE ENTERED.

Dated this 21st day of October, 2011.

                                        *s/ Tony N. Leung*
                                        TONY N. LEUNG
                                        United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **November 9, 2011**. A party may respond to the objections within 14 days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.